# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of<br>ROBERT CARLTON GILKEY,<br><br>       Deceased,<br><br>VICTORIA MARIA GOMES,<br><br>       Petitioner,<br><br>      v.<br><br>CRISTINA GILKEY and JOSEPH<br>ERROL GILKEY, as co-personal<br>representatives of the Estate of<br>Robert Carlton Gilkey,<br><br>       Respondents. | No. 80646-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br>FILED: January 21, 2020 |

HAZELRIGG-HERNANDEZ, J. — Victoria M. Gomes, a beneficiary of her father's estate, appeals the court's order approving the final report and petition for distribution, awarding fees, and closing the estate, and its order denying her motion for reconsideration or amendment of the judgment. She contends that the court ignored her claims of mismanagement and fraud committed by the co-personal representatives, Cristina[1] and Joseph E. Gilkey, erred in failing to hold a hearing on her motion for a verified accounting, denying her request for mediation under

---

[1] The brief of respondent misspells Ms. Gilkey's first name as Christina. The record shows the correct spelling is Cristina.

the Trust and Estate Dispute Resolution Act (TEDRA)[2], and awarding attorneys' fees to the co-personal representatives. Because the record does not support the court's determination that the objections Gomes made were frivolous and not made in good faith, we reverse the order awarding attorney fees to the co-personal representatives. In all other respects, we affirm.

## FACTS

Robert Gilkey died on January 9, 2015, leaving his seven children as beneficiaries of his estate. Two of his children, Cristina Gilkey and Joseph Gilkey, were named as co-personal representatives (PRs). At the time Gilkey died, his estate was solvent and valued at less than $150,000. On January 30, 2015, the PRs filed a petition to admit the will to probate, appoint Cristina and Joseph as PRs, adjudicate the solvency of the estate, and grant nonintervention powers, as provided in the will. The petition was granted.

On June 14, 2016 the PRs filed an initial report of affairs. On March 6, 2017, the PRs sought to complete administration of the estate by filing an updated report of affairs, a declaration that probate was complete, and a notice that the declaration of completion had been filed. The notice alerted heirs that there was a 30-day period in which they could petition the court to request an examination of "the reasonableness of said fees, or for an accounting, or both" and advised that if a petition was filed within the time allowed, the PRs would ask the court to set a time for the hearing and notify the petitioner.

---

[2] Chapter 11.96A RCW.

Victoria Gomes timely filed a "Petition for Order Re Declaration of Completion of Probate . . . (RCW 11.68.110(2))". She requested that the court order the PRs to (1) file a verified accounting of the administration of the estate, including itemized receipts, work orders, and any and all supporting documents for each transaction; and (2) obtain the approval of the court for the amount of any fees paid or proposed to be paid from the estate. On April 17, 2017, the PRs filed a final report and petition for distribution pursuant to RCW 11.76, which included a summary of actions during the estate administration,[3] a motion for an order closing the estate, approving fees and costs, and authorizing distribution, and a notice that a hearing on the motion to close the estate was set on May 19, 2017.

On May 17, 2017 Gomes filed an objection to closing the probate proceedings. She challenged payments from the estate to the decedent's caregivers, gifts to non-beneficiaries, the appraisal of a vehicle, and early distributions to beneficiaries for questionable expenses. The PRs responded and on May 18, 2017 the court heard the motion and objection.

At the hearing, the PRs argued that Gomes's objection was "inappropriate" and a waste of time, because the PRs were granted "absolute unfettered discretion" in the will. Gomes, appearing without an attorney, did not present any argument about the specific objections she had filed just two days earlier. Instead, she told the court she wanted to "take advantage of the notice of mediation under the TEDRA procedures." In the brief discussion that ensued, she cited an

---

[3] The PRs characterize this as a "response to the petition" but neither the PRs motion to close the estate nor the final report indicate they were filed in response to Gomes's petition. The PRs did not file a verified accounting or response to the petition.

unpublished decision suggesting it was error to ignore an heir's notice of TEDRA mediation and close probate. The court rejected this argument because no TEDRA petition had been filed, and then asked Gomes if there was "[a]nything else?" Gomes replied "[t]hat's all."

The court listed the submissions it had reviewed and concluded that based on all of the materials filed, it would overrule any objection, grant the petition to close the estate and authorize distribution. At that point, Gomes said, "I was going to ask for a continuance if that was denied." She said she had hired an attorney after receiving the PRs' response to her objection, but the attorney could not appear in court on the hearing date due to the short notice. The court denied the request for a continuance, explaining that Gomes should have asked for a continuance "right when you came up here at first and not waited until I denied your objection."

The court entered an order approving the final report and petition for distribution, approving fees and closing the estate. The court also orally ordered Gomes to pay the PRs' attorney fees in the amount of $2,500 based on its finding that her objections were frivolous and not made in good faith. On May 30, 2017 Gomes filed a motion for reconsideration or amendment of the judgment. Nearly a year after she filed this motion, on May 14, 2018, the court issued a two-sentence order of denial. Gomes appeals.

ANALYSIS

As a preliminary matter, PRs argue that the factual representations in the section titled "Introduction" of Gomes's appellant brief, should be disregarded

because she did not cite to the record or because they are incorrect, or both. RAP 10.3(a)(3) specifically permits a party to include an introduction that does not contain citations to the record or authority. Following the "Introduction" in Gomes's brief is the "Statement of the Case" which includes citations to the record, as required by RAP 10.3(a)(5). For the most part, the introduction in Gomes's brief is an unsupported historical account. In evaluating the issues on appeal, we disregard factual statements not supported by the record in the introduction, just as we disregard them in other parts of a brief.[4] See RAP 10.3(a)(5); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

We review decisions based on declarations, affidavits and documents de novo. In re Estate of Bowers, 132 Wn. App. 334, 339, 131 P.3d 916 (2006).[5] We review challenges to findings of fact for substantial evidence. Cowiche Canyon, 118 Wn.2d at 819. Substantial evidence is evidence sufficient to persuade a rational, fair-minded person of the truth of the finding. Miller v. City of Tacoma, 138 Wn.2d 318, 323, 979 P.2d 429 (1999). Unchallenged findings of fact are verities on appeal. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

---

[4] The PRs' brief also contains a number of factual allegations that are not supported by citations to the record. These, too, we disregard.

[5] Courts also state that de novo review on the entire record is the standard of review in probate proceedings, because they are equitable in nature. See, e.g., In re Estate of Black, 116 Wn. App. 476, 483, 66 P.3d 670 (2003); In re Ney's Estate, 183 Wash. 503, 505, 48 P.2d 924 (1935). Strictly speaking, this is no longer accurate. Law and equity merged in this state in 1951, and since then there has no distinction between appellate courts' methods of reviewing the record in equity cases and law cases tried to the court. In re Mayer's Estate, 43 Wn.2d 258, 264, 260 P.2d 888 (1953).

I.    Order Closing Probate

Gomes contends that the court erred in closing the estate despite the evidence of mismanagement and fraud committed by the PRs. In her objection to closing the probate proceedings, Gomes identified several specific financial transactions she claimed were evidence of mismanagement and fraud. The PRs responded to the specific objections by providing some additional documentation to support the resolution of claims and the payments to creditors. They also argued that there was no basis for Gomes to question their administration of the state because (a) the will provided the PRs absolute and uncontrolled discretion, unless they exercised their discretion fraudulently, in bad faith, or in a grossly negligent manner, and (b) Gomes and her husband were awaiting trial on criminal charges filed in Thurston Country accusing them of financially exploiting the decedent.[6]

To the extent the PRs assert the will granted them discretion so vast as to render their decision-making unreviewable, they are mistaken. The right of beneficiaries to have an estate distributed by law is a primary right. Id. 19. A personal representative "stands in a fiduciary relationship to those beneficially interested in the estate . . . [and] is obligated to exercise the utmost good faith and diligence in administering the estate in the best interests of the heirs." In re Estate of Larson, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985) (alterations in original).

---

[6] The PRs missed no opportunity to inform the court of this fact, although it had no bearing on whether the PRs breached their fiduciary duties in administering the estate or otherwise committed waste or mismanagement. Gomes noted in her brief that the criminal charges were dismissed in November, 2017. The court takes judicial notice, pursuant to RAP 9.11(a), that the Thurston County Superior Court dismissed the charges against Victoria Gomes in Case No. 15-1-01852-34 on November 20, 2017.

A superior court's authority when dealing with a nonintervention will is limited by statute. In re Estate of Bobbitt, 60 Wn. App. 630, 632, 806 P.2d 254 (1991). Once the court declares a nonintervention estate solvent, the court is not involved in administration of the estate except under specific statutory exceptions. Id. at 632 (citing In re Peabody's Estate, 169 Wash. 65, 70, 13 P.2d 431 (1932)). A petition for an accounting and for court approval of fees under RCW 11.68.110, such as Gomes had filed earlier in the case, "plays a limited role in the estate administrative process," because it invokes the authority of the court at or near the time administration is completed. In re Estate of Rathbone, 190 Wn.2d 332, 340, 412 P.3d 1283 (2018).

Two of Gomes's specific objections raise arguable claims that the PRs mismanaged the administration of the estate. First, the PRs paid five of the estate beneficiaries over $13,000 to cover their expenses to travel to and from the funeral. These payments were identified in the estate reports as "funeral expenses." Second, the PRs sold a backhoe belonging to the estate for about $2,900 and divided the proceeds evenly among six of the seven sibling beneficiaries, excluding Gomes from a share.

We cannot conclude on this record, however, that the court erred in closing probate, because when Gomes had the opportunity to present her argument to the trial court, she did not do it. When the PRs argued at the hearing they had the discretion to make the challenged distributions, Gomes did not offer any argument or theory to the contrary. She did not discuss her objection to closing the estate at all. Rather, she argued that she wanted to "take advantage of the notice of

7

mediation under the TEDRA procedures." This altered the course of the hearing, and when the court gave Gomes a final opportunity to make any further argument concerning the petition to close probate, she indicated she had no further argument.

We may decline to consider an issue that was inadequately argued below. In re Estate of Reugh, ___ Wn. App. ___, 563, 47 P.3d 544, 563 (2019) (citing Int'l Assn. of Fire Fighters, Local 46 v. City of Everett, 146 Wn.2d 29, 36-37, 42 P.3d 1265 (2002); Mid Mountain Contractors, Inc. v. Dept. of Labor & Indus., 136 Wn. App. 1, 8, 146 P.3d 1212 (2006)). We conclude that Gomes waived this issue in the trial court when she requested a different remedy.

II.    Petition for a Verified Accounting

Gomes contends that the court never addressed her petition for a verified accounting, which was error. The PRs filed a declaration of completion conforming to RCW 11.68.110(1) on March 6, 2017. Gomes then filed a petition under RCW 11.68.110(2), requesting the court to direct the PRs to file a verified accounting of their administration of Gilkey's estate, "including but not limited to: itemized receipts, invoices, appraisals, work orders, any and all supporting documents for each and every transaction," and to obtain the court's approval of "the amount of any fees paid or proposed to be paid from the Decedent's estate."

The PRs did not respond directly to this petition; instead, they filed a final report and petition for distribution pursuant to RCW 11.76.030 and a motion for an order closing the estate, approving fees and costs and authorizing distribution. Gomes did not direct the court's attention to the petition or present any argument

to explain why the PRs response to her petition was inadequate. The summary of the estate administration submitted by PRs did not include a verified accounting. However, when the court asked Gomes directly if she had "anything else" to present, she said "[t]hat's all." For the reasons set forth above, we conclude Gomes waived the issue of a verified accounting.

III.    Motion for TEDRA Mediation

Gomes contends the court erred in denying her request for mediation under TEDRA. The PRs argue that Gomes's request for mediation did not comply with the statutory requirements to commence an action pursuant to RCW 11.96A. We agree. A judicial proceeding under TEDRA is a special proceeding under the civil rules, and the provisions of RCW 11.96A governing TEDRA actions take precedence over any inconsistent provision of the civil rules. RCW 11.96A.090(1). A proceeding under TEDRA must be commenced as a new action; after the proceeding has been commenced, it may be consolidated with an existing proceeding. RCW 11.96A.090(2), (3).

Once a TEDRA proceeding has been filed, a party may submit a probate matter to mediation by serving notice of mediation on all the parties in substantially the form described in RCW 11.96A.300(1)(a), which governs required notice when no hearing on the issue has been set. Here, no petition to commence a TEDRA proceeding had been filed and Gomes did not file and serve notice conforming to the statute. Gomes cited an unpublished decision, In re Estate of Dubois, for the proposition that the court of appeals would order probate reopened if the PRs "ignored" a notice of TEDRA mediation and closed

the estate. 146 Wn. App. 1052, 2008 WL 4175027 (2008). GR 14.1(c) makes clear that "Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions." As such, we will limit our analysis to explain that Gomes' position reflects a misreading of the case as it does not support her claim. Not only because the TEDRA statute has been amended,[7] but also because here, Gomes had not filed any kind of TEDRA petition, whether as a new proceeding or one incidental to a matter already pending; nor had she served any kind of notice of TEDRA mediation. The court properly denied the motion for mediation using TEDRA procedures.

IV.    Attorney Fee Award

Gomes assigns error to the court's order directing her to pay attorney fees in the amount of $2,500. Under RCW 11.96A.150(1) a court may order costs, including reasonable attorney fees, to be awarded to a party from any party to the proceeding. In its exercise of discretion, the court "may consider any and all factors that it deems to be relevant and appropriate." Generally, we will not interfere with an award of attorney fees in a probate matter unless the circumstances clearly show the court abused its discretion. Estate of Larson, 103 Wn.2d at 521. Here, however, we have before us the same record that was before the superior court evaluating the fee request and thus in the same position is the superior court judge. Id. (citing In re Estate of Thompson, 133 Wash. 481,

---

[7] See Laws of 2013, ch. 246, § 2, amending RCW 11.96A.090(2) to require a proceeding under TEDRA to be commenced as a new action.

10

485, 233 P. 941 (1925)); In re Estate of Fetterman, 183 Wash. 410, 413-414 48 P.2d 638 (1935)).

In their response to Gomes's objection to closing the estate, the PRs argued that she caused the estate to incur substantial attorney fees both with her petition for an accounting and her objection to closing. They requested an award of $2,500 for the "effort incurred as a result of her frivolous and baseless actions" and her objection to closing the estate.

At the hearing, after denying Gomes's untimely request for a continuance, the court said:

> But in any event, I agree with [the PRs]. Enough is enough. Based on your objection and the responses, I don't believe that your objections were made in good faith. They are frivolous, and I'm approving the final order distributing . . . I'll entertain a motion for attorney's fees. I know that was requested.

(alterations in original). The court orally granted the award of $2,500 in attorney fees, noting that it seemed to be "a conservative estimate" of how much it had cost the estate and the other beneficiaries. This order was never reduced to writing.

Gomes asserts that her objections were made in good faith, were grounded in fact, and were based on the law. We agree that her objections show no signs of having been made in bad faith, although it seems apparent that Gomes did not appreciate the extent of discretion afforded the PRs. The documents and explanations provided by the PRs in response to Gomes's objection showed that some of her suppositions were incorrect, such as her claim that PRs payment to Gilkey's caregivers was unjustified because they were paid all they were owed before Gilkey died and her claim that the Nissan Pathfinder was improperly

11

appraised. This is not to say her objection was frivolous or her allegations baseless, however. Gomes submitted specific objections to certain transactions and supported them with appropriate documentation. Further, as noted above, her objections related to the payments for "funeral expenses," and the distribution of proceeds from the sale of the backhoe were legitimate and valid.

The court's finding's that Gomes's objection was not made in good faith and that her objections were frivolous were conclusory; the court did not identify any feature or characteristic of the objections that led to this conclusion. A motion or an argument is not frivolous simply because it is ultimately rejected by the court. Contentions that are grounded in fact and warranted in good faith are not baseless. See Bryant v. Joseph Tree, 119 Wn.2d 210, 219-20, 829 P.2d 1099 (1992). Moreover, had Gomes argued her objections to the superior court, she might have prevailed in some respects. On this record, it was an abuse of discretion to award attorneys' fees against Gomes.

V. Motion for Reconsideration

Gomes assigned error to the court's denial of her motion for reconsideration. We review a trial court's denial of a motion for reconsideration for abuse of discretion. Meridian Minerals Co. v. King County, 61 Wn. App. 195, 203-04, 810 P.2d 31, review denied, 117 Wn.2d 1017, 818 P.2d 1099 (1991). A court's decision is an abuse of discretion when its decision is manifestly unreasonable or rests on untenable grounds or untenable reasons. In re Boris v. Korry Testamentary Marital Deduction Trust, 56 Wn. App. 749, 755, 785 P.2d 484 (1990).

12

In her motion for reconsideration, Gomes argued that the PRs had falsely represented to the court they had unfettered discretion in administering the estate. This argument was premised on the assertion that the PRs had failed to file, acknowledge, or follow the terms of the Robert C. Gilkey Trust (Gilkey Trust), which was incorporated by reference in the will at Article Four. She attached a copy of the Gilkey Trust document to her motion. She also claimed that she had not received a hearing on her petition for a verified accounting, and that the court's finding that her objections were frivolous and its oral order imposing $2,500 in attorney fees violated RCW 4.84.185, because her objections were made in good faith and were grounded in fact.

The PRs responded, arguing that Gomes had received a full hearing, that they had provided ample documentation in response to her petition for an accounting and more documentation in response to her objection to closing the estate. In response to her contention that the will incorporated the Gilkey Trust, the PRs asserted that the trust no longer existed because Gomes and her husband had "initiated dissolution" of it during the time Gilkey was in their care. Joseph, one of the PRs, submitted a declaration stating that Gomes and her husband, "during the time they were 'caring' for our father, were responsible for actually dissolving the Trust. Therefore, the Trust did not exist when our father died."

Gomes did not raise the issue of the Gilkey Trust until she sought reconsideration of the court's order that probate be closed, which was far past the proper time to raise this issue in the context of an objection to the PRs administration of the estate. If Gomes had a concern that the PRs were failing in

13

their duties as trustees and PRs, she should not have waited until after the court issued an order approving the final report and closing the estate. Moreover, even if we were to find that PRs, who were also the named trustees in the Gilkey Trust, were required to adhere to the Trust's instructions, the outcome would be the same. The Trust vested in the trustees discretion to distribute to any beneficiary as much or all of the principal and income from the trust, up to the beneficiary's one-seventh share of the estate, at any time, provided the beneficiary was over the age of 21. The court properly denied Gomes's motion for reconsideration.

VI.    Attorney Fees on Appeal

The PRs request attorney fees on appeal pursuant to RAP 18.1 and RCW 11.96A.150, arguing that Gomes's appeal is frivolous, presents no debatable issues, is based on false and unsupported statements, and could not possibly have resulted in a reversal. This court having reversed the trial court's award of attorney fees against Gomes for those claims, it follows that the Gomes's appeal cannot be deemed frivolous and baseless. We therefore deny the PRs request for attorney fees on appeal. We reverse the court's award of attorney fees and remand for proceedings consistent with this opinion. We affirm in all other respects.

Reversed in part and affirmed in part.

WE CONCUR:

Chun, J.

Appelwick C.J.

14